

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| vs. | §CRIMINAL ACTION NO. 6:04-CR-022-HFF |
| | §   CIVIL ACTION 6:06-CV-548-HFF |
| HENRY E. MILLER | § | |
| Movant. | § | |

## ORDER

## I.     INTRODUCTION

This is a prisoner action.  Pending before the Court are Movant's letter, entered by the Clerk

of Court on February 23, 2006 [Doc. 1], the Government's Motion for Summary Judgment [Doc.

6], Movant's Motion for Default Judgment [Doc. 20], Movant's Motion for Summary Judgment

[Doc. 29], Movant's Motion Request for Admissions [Doc. 30], Movant's Motions for a Free Copy

of Plea Hearing and Sentencing Transcripts [Doc. 36, 37], Movant's Motions for Judgment as a

Matter of Law [Docs. 38, 46, 70], Movant's Motion to Produce [Doc. 50], Movant's Motion for a

Hearing [Doc. 52] and Movant's Motion for Recusal [Doc. 68].

## II.     FACTUAL AND PROCEDURAL HISTORY

### A.     Factual History

On August 5, 2003, Movant and Derrick Miller entered a National Bank of South Carolina

(NBSC) in Spartanburg, South  Carolina.  They ordered all employees to the  floor.  Derrick Miller

stood by the teller counter brandishing a handgun while Movant went behind the teller counter and

ordered employees to give him money which he put in a duffle bag. The money included dye packs. (Plea Tr. 16.) The Millers exited the bank and ran toward Movant's car, which was parked at a nearby apartment complex. While running through a wooded area on their way to the car, a dye pack exploded inside the duffle bag. The Millers later drove to Greensboro, North Carolina, where they used someone else's name to rent a hotel room. They counted dye stained money from the bank and later used acetone to clean the money. The bank reported a loss of $30,000 in this robbery. (Plea Tr. 16.)

On December 23, 2003, employees of the Capital Bank on Wade Hampton Boulevard in Greenville noticed Movant and Derrick Miller walking through the back parking lot of the bank. The Millers eventually walked into the front of the bank with ski masks pulled over their faces. As they walked into the bank lobby, they ordered bank employees to get on the floor. Derrick Miller waved a handgun and kept it trained on the employees, one of whom was pregnant. (Plea Tr. 16.) While Derrick Miller was on one side of the teller counter dealing with bank employees, Movant went behind the counter, got money from a teller drawer and money from the vault. (Plea Tr. 16-17.) Subsequently, the Millers left the Capital Bank through the back door. They took about $65,000 during the robbery. After exiting the bank, the Millers ran to a car in a neighborhood behind the bank.

The Greenville County Sheriff's Office and the Federal Bureau of Investigation (FBI) investigated the December robbery. A confidential source named Derrick Miller as one of the bank robbers. On January 12, 2004, Derrick Miller's girlfriend, LaToya Jackson (Jackson), was interviewed by the FBI. She stated that Derrick and Movant had robbed a bank late in December 2003. She further stated that Derrick Miller had brought home about $25,000 and placed it in his

2

side of the closet.  The following items were found during a  search of Jackson's residence on January 12:  a Beretta 9000 semiautomatic handgun and a loaded magazine; two white fabric gloves with yellow stripes around the wrists; two black ski masks; and $8,500 bundled in stacks with Capital Bank straps. (Plea Tr. 17.)  Movant was subsequently arrested on January 21, 2004.

       B.     *Procedural History*

Movant was charged in four counts of a six count Second Superseding Indictment filed on August 11, 2004.  Count one charged Movant and two co-defendants with armed robbery of Capital Bank in Greenville, South Carolina, on December 23, 2003, and aiding and abetting each other in the commission of the offense, in violation of 18 U.S.C. §§ 2113 (a), 2113(d) and 2.  Count two charged Movant and one co-defendant with the use of and carrying firearms during and in relation to, and in furtherance of a crime of violence on December 23, 2003, and aiding and abetting each other in the commission of the offense, in violation of 18 U.S.C. §§ 924(c)(1)(A) and 2.  Count three charged Movant and a co-defendant with armed bank robbery of the NBSC in Spartanburg, South Carolina, on August 5, 2003, and aiding and abetting each other in the commission of the offense, in violation of 18 U.S.C. §§ 2113 (a), 2113(d) and 2.  Count four charged Movant and a co-defendant with the use of and carrying firearms during and in relation to, and in furtherance of a crime of violence on August 5, 2003, and aiding and abetting each other in the commission of the offense, in  violation of 18 U.S.C. §§  924(c)(1)(A) and 2.

On February 1, 2005, a jury was impaneled and a trial date of March 21, 2005, was set before this Court.  On March 3, 2005, a written plea agreement was filed and on March 4, 2005, Movant, represented by defense counsel, David Plowden, pleaded guilty to counts 1-4 of the Superseding Indictment.

On June 24, 2005, Movant's sentencing hearing was held. At that time, the Government moved for a downward departure in his case. The Court granted the downward departure motion and sentenced Movant to 300 months imprisonment and 5 years of supervised release. Judgment was entered on the district court docket on July 8, 2005. Movant did not file a direct appeal. His letter asking the Court to vacate the conviction and sentence for a violation of 18 U.S.C. §§ 924(c)(1)(A) and 2 was entered by the Clerk of Court on February 23, 2006.

III.    **DISCUSSION**

    *A.    Initial matters concerning the materials filed by Movant.*

Movant seeks to have his conviction and sentence vacated for a violation of 18 U.S.C. §§ 924(c)(1)(A) and 2. Initially Movant's letter was characterized as a 28 U.S.C. § 2255 motion. Pursuant to *United States v. Emmanuel*, 288 F.3d 644, 649 (4th Cir. 2002), however, the Court gave Movant an opportunity to clearly characterize the intent of his letter.

The response of Movant has been somewhat equivocal. In some of his responses, he has referred to the letter as a § 2255 motion; but at others times, he has objected to the re-characterization. Therefore, in an abundance of caution and the interest of justice, the Court will address his letter in an alternative fashion. However, the Court notes that the relief Movant seeks is available only under § 2255 as his time for filing a motion to reconsider has expired, since the judgment became final on July 8, 2005. Furthermore, if the letter is to be construed as a Rule 35(b) motion, that relief is unavailable to him because the Government must file the motion and this has not been done.

Moreover, Movant is currently under an active sentence for robbery that has not yet expired. Therefore, he is not entitled to relief under 28 U.S.C. § 2241. Furthermore, even if he characterized

4

the action as a § 2241, he would not be entitled to relief because § 2255 affords him the relief which he seeks and § 2241 cannot be used in lieu of a proceeding under § 2255. *Swain v. Pressley*, 430 U.S. 372, 381 (1977) (holding that a petition under § 2241 is an available avenue of collateral attack for a federal prisoner serving a federal sentence only where a motion under § 2255 is "inadequate or ineffective to test the legality of his detention.")

    B.    *Movant's claim that his attorney was ineffective*

        1.    *Failure to inform – consequences of plea*

Movant first argues that his attorney failed to fully inform him as to the severe consequences of pleading guilty to such serious charges. The Court is unpersuaded, however, that Movant is able to demonstrate an ineffective assistance of counsel claim on this basis.

To prevail on a claim of ineffective assistance of counsel, it must be shown that counsel's performance fell below an objective standard of reasonableness, and that counsel's deficiencies prejudiced his defense. *Strickland v. Washington*, 466 US 668, 687-692 (1984). The defendant "must show that there is a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different". *Id.* at 694. The reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id*. at 690. Further, there is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . ." The reviewing court should be highly deferential in scrutinizing counsel's performance, and should screen from its analysis the distorting effects of hindsight. *Id*, at 688-89.

As to the prejudice prong, Movant has the burden to prove that the alleged deficiencies were in fact prejudicial to the outcome of the proceeding. It is not enough for the defendant to show that

the errors had some conceivable effect on the outcome of the proceeding.  Virtually  every act or

omission of counsel would meet that test, and not every error that conceivably could have influenced

the outcome undermines the reliability of the result of the proceeding.  *Strickland,* 466 U.S. at 693.

There is no evidence whatsoever in the record that indicates that Mr. Plowden provided

ineffective assistance.  Moreover, Movant never shows, as he must, how his attorney's alleged

failures impacted the outcome of his case.  Therefore, what the Court is left with are simply

statements that Movant's attorney should have done more on his behalf.  These conclusory

allegations do not act to carry Movant's burden to show that his attorney was deficient, and that the

result of the proceeding would have been different had counsel done more.

Furthermore, Movant's allegation of ineffective assistance of counsel directly contradicts

his prior statements to the Court:

> THE COURT: Are you satisfied with your attorney's representation?
> Other than he can't change the facts.
> THE DEFENDANT:  Yes.
> THE COURT:  All right.  Has he done everything you've asked him
> to do?
> THE DEFENDANT:  Well, he didn't file a fast and speedy trial for
> me when I first  asked, but other than that, yeah, he did everything.
> . . . .
> THE COURT: . . . In answering my questions today has anybody told
> you how to  answer these questions?
> THE DEFENDANT:  No.  No, your honor.
> THE COURT:   In other words, the answers you've given me have
> been your own  answers?
> THE DEFENDANT:  Yes, your honor
> THE COURT:  And your answers have been truthful?
> THE DEFENDANT:  Yes, your honor.
> THE COURT:  Including your response to me that you're satisfied
> with your attorney?
> THE DEFENDANT:  Yes, your honor.

(Plea Tr. 4, 24, 25.)

6

Statements previously made under oath that affirm satisfaction with counsel are binding on the defendant absent strong evidence to the contrary. *Fields v. Attorney Gen. of Md.*, 956 F.2d 1290, 1299 (4th Cir. 1992) (citing *Blackledge v. Allison*, 431 U.S. 63, 74 (1977) (stating that the representations of a defendant and any findings made by the judge in accepting a guilty plea stand as a "formidable barrier in any subsequent collateral proceedings.")).

### 2. *Failure to inform – options*

Movant next maintains that his attorney failed to inform him that he could have plead guilty to the robbery charges, but not to the gun charges. The Court is unconvinced that Movant is can establish an ineffective assistance of counsel claim on this ground.

"[A] defendant's solemn declarations in open court affirming [a plea] agreement . . . 'carry a strong presumption of verity . . . .'" *United States v. White*, 366 F. 3d 291, 296 (4th Cir. 2004) (quoting *Blackledge*, 431 U.S. at 76). This presumption exists "because courts must be able to rely on the defendant's statements made under oath during a properly conducted Rule 11 colloquy." *United States v. Bowman*, 348 F.3d 408, 417 (4th Cir. 2003). In the absence of extraordinary circumstances, " the truth of sworn statements made during a Rule 11 colloquy in open court is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict sworn statements." *United States v. Lemaster*, 403 F.3d 216, 221 (4th Cir. 2005). "Otherwise, a primary virtue of Rule 11 colloquies would be eliminated – 'permitting quick disposition of baseless collateral attacks.'" *Id*. (citing *Blackledge*, 431 U.S. at 79 n.19).

The record in Movant's case reflects that the statements he made in open court during his plea hearing contradict his present contentions that he was not informed about the consequences of his plea.

The record indicates that Movant plead guilty pursuant to a plea agreement with the government and after affirming his decision in open court. Movant affirmed his intention to plead guilty to the indictment and agreed with the Court's summary of the charged conduct. (Plea Tr. 5, 9, 10, 14.) He agreed with the government's summary of the facts of the case and he acknowledged that his sentence could be harsher than expected. (Plea Tr. 16-18, 22, 23.)

Additionally, this Court informed Movant at his guilty plea proceeding the penalties that he was facing. In fact, the record reflects a colloquy between the Court and Movant about the consequences of pleading guilty to the gun charges and the sentence he was facing. Movant admitted his guilt and informed the Court he understood the penalties. (Plea Tr. 10-14)

Movant provides no "extraordinary circumstances" to overcome the presumption that the truth of the statements offered in open court are reliable. Movant understood the potential penalties for all of the charges and stated that he was pleading guilty because he was guilty. (Plea Tr. 11, 24.) Therefore the Court finds that this claim has no merit.

### C. Use of Firearm During the Bank Robberies

The gist of Movant's claim is that because he did not carry or use a firearm during the course of the robbery, he could not be charged and sentenced for a violation of 18 U.S.C. §§ 924(c)(1)(2) and 2. As a part of this claim, he contends that his conviction and sentence were violative of the Constitution and laws of the United States and he, therefore, raises actual innocence. His claim is based upon the Supreme Court case of *Bailey v. U.S.,* 516 U.S.137 (1995). However, this reliance is misplaced. Following the *Bailey* decision, the Congress of the United States amended § 924 to specifically address issues raised by the *Bailey* Court. Those amendments became effective November 13, 1998.

Previous to the amendment, 18 U.S.C. § 924 provided, in pertinent part, as follows:

> Whoever, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime which provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which he may be prosecuted in a court of the United States, uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime, be sentenced to imprisonment for five years. . . . In the case of his second or subsequent conviction under this subsection, such person shall be sentenced to imprisonment for twenty years. . . . Notwithstanding any other provision of law, the court shall not place on probation or suspend the sentence of any person convicted of a violation of this subsection, nor shall the term of imprisonment imposed under this subsection run concurrently with any other term of imprisonment including that imposed for the crime of violence or drug trafficking crime in which the firearm was used or carried.

Subsequent to the amendment, however, 18 U.S.C. § 924(c) currently reads, in relevant part,

> [A]ny person who, during and in relation to any crime of violence or drug trafficking crime (including a crime of violence or drug trafficking crime that provides for an enhanced punishment if committed by the use of a deadly or dangerous weapon or device) for which the person may be prosecuted in a court of the United States, uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence or drug trafficking crime--
>> (i) be sentenced to a term of imprisonment of not less than 5 years;
>> (ii) if the firearm is brandished, be sentenced to a term of imprisonment of not less than 7 years; and
>> (iii) if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years.
> (B) If the firearm possessed by a person convicted of a violation of this subsection--
>> (i) is a short-barreled rifle, short-barreled shotgun, the person shall be sentenced to a term of imprisonment of not less than 10 years; or
>> (ii) is a machine gun or a destructive device, or is equipped with a firearm silencer or firearm muffler, the person shall be sentenced to a term of imprisonment of not less than 30 years.
> (C) In the case of a second or subsequent conviction under this subsection, the person shall--

           (i) be sentenced to a term of imprisonment of not less than 25 years; and

           (ii) if the firearm involved is a machine gun or a destructive device, or is equipped with a firearm silencer or firearm muffler, be sentenced to imprisonment for life.

    (D) Notwithstanding any other provision of law--

           (i) a court shall not place on probation any person convicted of a violation of this subsection; and

           (ii) no term of imprisonment imposed on a person under this subsection shall run concurrently with any other term of imprisonment imposed on the person, including any term of imprisonment imposed for the crime of violence or drug trafficking crime during which the firearm was used, carried, or possessed.

In light of the amendments, numerous Circuit Courts of Appeal have addressed aider and abettor liability for weapons not actually used or carried by the aiding and abetting Defendant. The Fourth Circuit Court of Appeals in three cases, to-wit: *U.S. v. Wilson*, 135 F.3d 291, 304-305 (4th Cir. 1998); *U.S. v. Martinez*, 136 F.3d 972, 976-97 (4th Cir. 1998), and *Rattigan v. U.S.*, 151 F.3d 551, 557-558 (4th Cir. 1998) have addressed aider and abettor liability under 18 U.S.C. § 924 (c)(1)(A). Essentially, the holding is that to convict under aiding and abetting liability, the Defendant has to participate at some stage of the illegal adventure with intent to bring about the result. In the case at hand, the use of the gun by Derrick Miller facilitated the bank robbery, a result that Movant wanted. In executing the robbery, Movant benefitted from the use of the gun as much as Derrick Miller.

In his letter, Movant states that he is guilty of participating in the robberies, but that he never entered the banks with a firearm. Nevertheless, Movant never disputed the fact that a weapon was carried in the bank robberies at his Rule 11 hearing or at sentencing. He had a copy of the indictment and after the Court read it to him again he stated that he understood the charges. He admitted that a gun was used in the robberies and understood that it did not matter who actually

possessed the weapon.  Then he plead  guilty to the two gun counts in the indictment. (Plea Tr. 9, 10, 13, 14.)

Movant's knowing and voluntary guilty plea constitutes an admission of the material elements of the crime, *McCarthy v. United States*, 394 U.S. 459, 466 (1969), and waives  non-jurisdictional errors.  *Tolett v. Henderson*, 411 U.S. 258, 267 (1973).

While Movant objects to the Court's use of the term *the hand of one is the hand of all*,  under the facts of this case, aider and abettor liability are synonymous with the term *the hand of one is the hand of all*.   Therefore, Movant's claim has no merit.

D.   *Alleged Sentencing Disparity.*

In his letter, Movant also questions the length of his sentence compared to the sentences  of other defendants in this case.  Other defendants' sentences have no bearing on Movant's sentence. It is well settled that an otherwise proper sentence may not be challenged on the  basis of disparity between sentences of co-defendants.  That a co-defendant received a lighter  sentence need not be considered. *United States v. Davis*, 98 F.3d 141, 145 (4th Cir. 1996*); United  States v. Ellis*, 975 F.2d 1061, 1065-66 (4th Cir. 1992); *United States v. Foutz*, 865 F.2d 617, 621  (4th Cir. 1989) ("A sentencing court is simply not obliged to consider the sentences of co-defendants.").  Hence, this claim has no merit.

E.     *Motion to Recuse*

Movant has filed a motion for the undersigned to recuse himself from considering movant's claims on the basis of racial bias.  The Court asserts that it has no racial bias nor any other bias toward Movant and the record clearly shows that at all times he was treated with dignity and civility. Because Movant has failed to set forth any proper factual or legal basis for the granting of this motion, the motion will be denied.

## IV.    CONCLUSION

**WHEREFORE, IT IS ORDERED**:

1.      To the extent that Movant's letter is interpreted as a motion brought pursuant to Fed. R. Crim. P 35(b), that motion is **DENIED**;

2.      To the extent that Movant's letter is interpreted as a motion for reconsideration of his sentence, that motion is **DENIED**;

3.      To the extent that Movant seeks relief pursuant to § 2241, that relief is **DENIED**;

4.      To the extent that Movant seeks relief under § 2255, that relief is likewise **DENIED**;

5.      Movant's Motion for Recusal is **DENIED**; and

6.      The remaining motions referenced in section I. of this Order are, thus, rendered **MOOT**.

Signed this 7th day of September, 2007, in Spartanburg, South Carolina.

                                s/ Henry F. Floyd
                                HENRY F. FLOYD
                                UNITED STATES DISTRICT JUDGE


*****

## NOTICE OF RIGHT TO APPEAL

The parties are hereby notified of the right to appeal this Order within sixty (60) days from the date hereof, pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure.